**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**ASHLEY FLORA ANN MILLER,**

**Plaintiff,**

**v.**

**Case No.: 3:25-cv-1042**

**DARREL HAMILTON JORDAN, JR.,**
***In His Individual Capacity***

***and***

**JURY TRIAL DEMANDED**

**TERESA VICE, *In Her Individual Capacity,***

**Defendants.**

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Ashley Flora Ann Miller, (hereinafter, "Plaintiff" or "Ms. Miller"), by counsel, pursuant to Rule 15(a)(1)(B), and hereby presents her First Amended Complaint against Darrel Hamilton Jordan, Jr., in his individual capacity and Teresa Vice in her individual capacity, (hereinafter, "Defendants"). This matter arises from an employment relationship between the parties. As provided below, Defendants are liable to Ms. Miller for damages.

This matter originally advanced against different defendants. All parties to this action worked together at the Office of the Attorney General in Richmond, Virginia. Since filing Plaintiff's original pleading, Plaintiff's counsel has obtained information indicating that the decision to terminate Plaintiff was made by Defendant Jordan and Defendant Vice. Counsel for the defendants listed in the original Complaint filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Civil Rules. This Amended Pleading asserts new

Defendants. "Typically, the filing of an amended complaint moots a previously filed motion to dismiss." *See, Laber v. Harvey,* 438 F.3d 404, 426–28 (4th Cir. 2006), *E.E.O.C. v. Rex Healthcare, Inc.*, No. 5:24-cv-00739, 2025 WL 1184101, at *1 (E.D.N.C. Apr. 23, 2025).

**JURISDICTION AND VENUE**

1. Ms. Miller is a resident of Gloucester County, Virginia.

2. At all times relevant to this matter, Defendants served under color of state law as employees of the Commonwealth of Virginia's Attorney General.

3. Ms. Miller served as Financial Manager for Defendants.

4. Venue is proper as the acts and omissions described below occurred within the Eastern District of Virginia.

5. This matter raises questions of state and federal law. Federal questions are presented pursuant to 42 U.S.C. § 1983. This Court possesses jurisdiction over this matter. *See generally*, 28 U.S.C. §§ 1331, 1367.

6. Defendants acted under color of state law.

7. This matter also advances a state law *Bowman* claim against individual Defendants. The Supreme Court of Virginia has unequivocally permitted the advancement of Bowman claims against individual defendants. *Van Buren v. Grubb*, 284 Va. 584 (2012). "We find Virginia's existing precedent permitting such suits to be consistent with the Court's established case law regarding agency relationships. It has long been settled in Virginia that employers and employees are deemed to be jointly liable and jointly suable for the employee's wrongful act." *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 483-84, 339 S.E.2d 538, 543 (1986); *see also Miller v. Quarles*, 242 Va. 343, 347, 410 S.E.2d 639, 642, 8 Va. Law Rep. 1271 (1991) ("Both principal and agent

are jointly liable to injured third parties for the agent's negligent performance of his common law duty of reasonable care under the circumstances.").

8. Defendant Jordan served as Chief of Staff at the Office of Attorney General and was above Plaintiff in the chain of command. Defendant Jordan possessed firing authority and disciplinary authority over Plaintiff.

9. Teresa Vice served as Director of Human Resources. Though she was not supervisory to Plaintiff, Defendant Vice possessed firing authority and disciplinary authority over Plaintiff.

**STATEMENT OF FACTS**

10. Ms. Miller was hired in 2021 to serve as a Senior Accountant.

11. Ms. Miller received an annual salary, health insurance, VRS retirement contributions, and other benefits part and parcel to her employment.

12. Ms. Miller was wrongfully terminated from employment on or about March 25, 2024. This termination was a retaliatory decision based upon Ms. Miller's protected expression of speech.

13. Defendants made this decision.

14. Defendants had actual notice of Ms. Miller's protected speech as detailed below prior to the decision to terminate her employment.

15. Defendants did not terminate Ms. Miller's employment for cause. Defendants did not terminate Ms. Miller's employment related to the commission of any act involving moral turpitude, malfeasance, insubordination, dishonesty, or negligence.

16. Defendants terminated Ms. Miller's employment when Ms. Miller was willing and able to perform her duties.

17. In December of 2023 and January of 2024, Ms. Miller investigated a vendor

invoice that had been submitted to her for payment by the Virginia Attorney General's Animal Law Unit.

18. The payment request directed Ms. Miller to pay taxpayer funds to a nonprofit company named The Virginia Animal Fighting Task Force ("VAFTF"). This company is registered with the Virginia's State Corporation Commission and lists a principal office address of Richmond, Virginia.

19. Ms. Miller noted that this vendor had never been registered for payment by the Virginia Attorney General's Office before so she set about to collect documentation on VAFTF.

20. When Ms. Miller observed the corporate leadership personnel of VAFTF, she grew concerned. Multiple attorneys employed by the Virginia Office of Attorney General served as executive leadership of VAFTF.

21. Ms. Miller recognized this request for payment as a breach of law, to-wit, a conflict of interest. Pursuant to the Virginia State and Local Government Conflict of Interests Act, Va. Code § 2.2-3100 *et seq*., payments to VAFTF violated the law. State officials may not "use his [or her] public position to obtain financial benefit for himself [or herself], a family member, or a business with which he [or she] is associated."

22. Pursuant to the Virginia Public Procurement Act, public officials may not have a financial interest in any vendor, cannot award or influence contracts for personal gain, and cannot accept or provide kickbacks. Va. Code § 2.2-4300 *et seq*.

23. Although Ms. Miller is not an attorney, she is aware that kickbacks and embezzlement are illegal in Virginia and against Virginia's public policy.

24. Ms. Miller approached Christie Wells, Chief Financial Officer of the Virginia Attorney General's Office. Ms. Miller reported the demand for payment to VAFTF as a

wrongful act, a matter of public concern, a violation of law, and refused to remit payment.

25. Defendants received notice of this report.

26. Ms. Wells worked at the direction of Defendants. Throughout the series of events detailed below, Ms. Wells provided notice to Defendants of Ms. Miller's communications and actions.

27. Despite this, no action was taken. The Office of Attorney General continued processing payments to employee-led companies in contravention of state and federal law.

28. After meeting with the Defendants, Ms. Wells explained to Plaintiff that senior leadership decided that the Office of Attorney General would not issue payments directly to the nonprofit even though the invoice had been submitted under the nonprofit's name and the charge had been made on the nonprofit's credit card.

29. Instead, Defendants directed that the reimbursements, based on the receipts submitted with the original invoice, be issued directly to Ms. Taylor. Ms. Wells stated that Ms. Taylor understood this plan and agreed to pay the nonprofit back.

30. Defendants' intent remained that the nonprofit receive the funds, but leadership sought the payments to pass through employee reimbursements to avoid transparency. The purpose of this structure was to avoid any transactions or written records linking the Office of Attorney General to the nonprofit.

31. Ms. Miller noted to Ms. Wells in the middle of January of 2024 that the funds could not be paid to employees of the Virginia Attorney General's Office as the funds were regulated by state and federal law. Some of the funds received and earmarked for payment directly to Virginia Attorney General employees came from the U.S. Department of Justice.

32. On or about January 16 or 17, 2024, Ms. Miller refused her superior's directives to process thousands of dollars in payments that violated the law. The directive was not personally given to Plaintiff by Defendants. However, the directive was provided to Ms. Wells by Defendants for the purpose of directing Plaintiff to process the reimbursements. Upon information, Ms. Wells served as the agent of Defendants in this matter.

33. Defendants circumvented Ms. Miller's signatory authority and multiple vouchers were paid illegally to "vendors" owned and operated by Virginia Attorney General employees.

34. Ms. Miller observed senior leadership at the Virginia Attorney General's Office to funnel thousands in taxpayer dollars illegally to their own employees.

35. It is not the mission of the Office of the Attorney General to enrich its employees with taxpayer funds. At no time was Ms. Miller insubordinate nor did she impede the legitimate performance of the Office of the Attorney General.

36. Ms. Miller expressed to leadership of the Virginia Attorney General's Office that their actions violated the law. Defendants had notice of all of Ms. Miller's reports on this issue.

37. Ms. Miller communicated that to process the reimbursement, she would be engaging in a criminal act. Ms. Miller is not an attorney but is aware of embezzlement, the taking of money by false pretenses, fraud, and corruption regarding public funds. Ms. Miller objected to performing these reimbursements because to do so would be to engage in a criminal act in furtherance of the criminal enterprise.

38. Ms. Miller engaged in follow-up communications to senior leadership with expressions of free speech on matters of public concern regarding these issues in February of 2024.

39. Ms. Miller and co-worker Linda Orr engaged in communications regarding the illegal activities of their supervisors. These were expressions on matters of public concern.

40. The Attorney General's Office began an investigation of Ms. Miller that was administered by Defendant Vice.

41. The investigation focused on the communications between Ms. Miller and Ms. Orr.

42. Upon reviewing the results and findings of the investigation, Ms. Wells concluded that neither Ms. Orr nor Ms. Miller should be terminated.

43. Ms. Wells stated to Defendant Vice that Ms. Miller and Ms. Orr did not deserve termination and that the termination itself would be more egregious than any communications sent between Ms. Orr and Ms. Miller.

44. Defendant Vice ignored the statements of Ms. Wells despite Ms. Wells' role in the chain of command above Ms. Orr and Ms. Miller.

45. Given the amounts of the reimbursements, the parties seeking reimbursement, and the open violation of conflict-of-interest laws, Ms. Miller held a good faith belief that the reimbursements were fraudulent, i.e., false requests for public funds. Given her experience and training, this was a reasonable belief.

46. Ms. Miller's objection to processing the reimbursements and her communications regarding the same did not materially affect the Office of the Attorney General. Her objections may have materially affected the individual bank accounts of employes who would have otherwise received taxpayer funds unlawfully. These actions did not negatively affect the Office of the Attorney's General's abilities to fulfill its legitimate duties. The Office of the Attorney General had existed for many years without engaging in corrupt financial practices that profited its employees.

47. At no time did Defendants or Ms. Wells communicate that Ms. Miller's actions

impeded the roles and duties of the Office of the Attorney General.

48. Defendant Vice acted in concert with Defendant Jordan to terminate Ms. Miller due to her protected communications and objection to processing illegal reimbursements.

49. Defendant Jordan was directed by the Attorney General to make all personnel decisions including firing decisions of non-attorney staff at the Office of Attorney General. Defendant Jordan had "final say" regarding the termination decision of Ms. Miller.

50. Defendant Jordan acted in concert and agreement with Defendant Vice. Defendants were aware of the communications and objections of Ms. Miller as described above and were motivated by these to terminate her.

51. On March 25, 2024, Defendants terminated Ms. Miller.

52. In the termination meeting, Defendant Wells discussed a memorandum that detailed the reasons for Ms. Miller's termination. These reasons were a pretext to mask retaliation.

53. Defendants did not provide nor disclose the memorandum to Ms. Miller.

54. After her termination, Ms. Miller submitted a Freedom of Information Act request to her former employer seeking all documents related to her employment including the alleged memorandum.

55. The Virginia Attorney General's Office never provided this memorandum in response to her lawful request. No documents of any kind that would support the decision to terminate Ms. Miller were produced. This is because these documents do not exist.

56. Ms. Miller never received a performance improvement plan nor workplace discipline prior to her termination.

57. Prior to her termination, Ms. Miller received excellent work performance evaluations.

58. Ms. Miller has suffered and will continue to suffer compensatory damages, emotional distress, and other significant financial and personal harm, due to the retaliation committed by Defendants.

## COUNT I: FIRST AMENDMENT FREEDOM OF SPEECH RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C § 1983

59. Ms. Miller incorporates by reference herein the preceding paragraphs of this Complaint.

60. Ms. Miller engaged in constitutionally protected speech on matters of public concern. All of this occurred regarding substantial financial impropriety and conflicts of interest in which state employees enriched themselves illegally.

61. Defendants had actual notice of Ms. Miller's expression of speech.

62. Ms. Miller's speech did not impede or conflict with the performance of her job duties.

63. Ms. Miller's speech did not interfere with the operation of or undermine the mission of Defendants. Indeed, it *should* be the mission of the Commonwealth of Virginia's highest law enforcement officials to enforce the law, not break it for financial gain.

64. Defendants terminated Ms. Miller's employment because she engaged in protected activity pursuant to her First Amendment rights.

65. Defendants violated Ms. Miller's First Amendment rights and retaliated against her in violation of 42 U.S.C. § 1983.

66. Defendants retaliated against Ms. Miller because of her constitutionally protected speech.

67. Defendants' termination of a public employee for expressing First Amendment rights is a violation of clearly established statutory and constitutional rights. Defendants, two of whom are licensed attorneys well acquainted with the applicable laws, policies, and responsibilities of government, would have known that taking such action was unlawful.

68. Defendants acted with reckless and/or callous indifference to Ms. Miller's legal rights.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF *BOWMAN*

69. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

70. Though she is not a lawyer, Plaintiff recognized that intentionally processing thousands of taxpayer dollars to recipients in violation of state and federal laws was illegal.

71. Ms. Miller refused an illegal directive from Defendants.

72. Pursuant to the Virginia State and Local Government Conflict of Interests Act, Va. Code § 2.2-3120, knowingly violating the Act is a misdemeanor.

73. Further, her knowing participation in the illegal reimbursements exposed her to criminal liability pursuant to Va. Code § 18.2-111 and Va. Code § 18.2-178.

74. Further, Virginia criminalizes embezzlement, accepting funds under false pretense, and conspiracy to commit the same.

75. Defendants sought the continuation of the reimbursement scheme at the Office of Attorney General. Due to Ms. Miller's objections, she was removed by Defendants from employment.

76. But for Ms. Miller's refusal to engage in illegal activity directed by Defendants,

Defendants would not have terminated her employment.

77. Ms. Miller was terminated in violation of *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

78. Due to her termination from employment, Ms. Miller has suffered pecuniary loss, lost salary, benefits, compensatory damages, damages to her reputation, quality of life, emotional distress, shame, humiliation and embarrassment, and other non-pecuniary loss.

79. Defendants acted with actual malice or reckless disregard of the protected rights of Plaintiff so as to support an award of punitive damages.

WHEREFORE Plaintiff Ashley Flora Ann Miller, prays for judgment against Defendants Darrel Hamilton Jordan, Jr., and Teresa Vice, jointly and severally, consistent with these allegations, and requests that the Court award her compensatory damages, back pay, front pay, equitable relief, and punitive damages, together with pre-judgment interest from the date of termination, as well as incidental and consequential costs associated herewith, including attorneys' fees and such other relief as a competent Court would deem appropriate.

**JURY TRIAL RESPECTFULLY REQUESTED**
**UPON ALL ISSUES THAT MAY BE SUBMITTED TO A JURY**

Respectfully submitted,

**ASHLEY FLORA ANN MILLER**

By /s/ ____________________________
Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
*Counsel for Plaintiff*

Thomas E. Strelka, Esq. (VSB# 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
Tel: 540-283-0802
thomas@vaemployment.law

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Charles E. James, Jr., Esq.
Amanda M. Weaver, Esq.
Meredith M. Haynes, Esq.
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, VA 23219
cjames @williamsmullen.com
aweaver@williamsmullen.com
mhayenes@williamsmullen.com
*Counsel for Defendant*

By *_/s/ Thomas E. Strelka_*
Thomas E. Strelka, Esq. (VSB # 75488)
VIRGINIA EMPLOYMENT LAW
*Counsel for Plaintiff*